Slip Op. 24–103

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| FUSONG JINLONG WOODEN GROUP CO., LTD. ET AL., | : |
| Plaintiffs, | : |
| YIHUA LIFESTYLE TECHNOLOGY CO., LTD. ET AL., | : |
| Consolidated Plaintiffs, | : |
| and | : |
| LUMBER LIQUIDATORS SERVICES, LLC ET AL., | : Before: Richard K. Eaton, Judge |
| Plaintiff-Intervenors, | : Consol. Court No. 19-00144 |
| v. | : |
| UNITED STATES, | : |
| Defendant, | : |
| and | : |
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING, | : |
| Defendant-Intervenor. | : |

**<u>OPINION</u>**

[U.S. Department of Commerce's remand results are sustained.]

Dated: September 18, 2024

*Alexandra H. Salzman*, *Gregory S. Menegaz*, and *J. Kevin Horgan*, deKieffer & Horgan, PLLC, of Washington, D.C., for Plaintiffs Fusong Jinlong Wooden Group Co., Ltd., Fusong Qianqiu Wooden Product Co., Ltd., and Dalian Qianqiu Wooden Product Co., Ltd.

*Daniel M. Witkowski* and *Matthew R. Nicely*, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington, D.C. for Consolidated Plaintiff Sino-Maple (JiangSu) Co., Ltd. With them on the brief was *Dean A. Pinkert*, Hughes, Hubbard & Reed LLP, of Washington, D.C.

*David J. Craven*, Craven Trade Law LLC, of Chicago, IL, for Consolidated Plaintiffs A&W (Shanghai) Woods Co., Ltd., Dun Hua Sen Tai Wood Co., Ltd., Dunhua Shengda Wood Industry Co., Ltd., Hangzhou Hanje Tec Co., Ltd., Hunchun Xingjia Wooden Flooring Inc., Huzhou Chenghang Wood Co., Ltd., and Zhejiang Fuerjia Wooden Co., Ltd.

*Adams C. Lee*, Harris Sliwoski LLP, of Seattle, WA, for Consolidated Plaintiff Zhejiang Dadongwu GreenHome Wood Co., Ltd.

*Lizbeth R. Levinson*, *Ronald M. Wisla*, and *Brittney R. Powell*, Fox Rothschild LLP, of Washington, D.C., for Consolidated Plaintiffs Baishan Huafeng Wooden Product Co., Ltd., Cohesion Trading Limited, Galleher Corp., Galleher, LLC, Jilin Forest Industry Jinqiao Flooring Group Co., Ltd., Metropolitan Hardwood Floors, Inc., MGI International, Mobetta Trading Limited, Nakahiro Jyou Sei Furniture (Dalian) Co., Ltd., Shenyang Haobainian Wooden Co. Ltd., and Wego International Floors LLC.

*Kavita Mohan*, *Elaine F. Wang*, *Francis J. Sailer*, *Ned H. Marshak*, and *Jordan C. Kahn*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, D.C., for Consolidated Plaintiff Scholar Home (Shanghai) New Material Co., Ltd.

*Sarah M. Wyss* and *Jill A. Cramer*, Mowry & Grimson, PLLC, of Washington, D.C., for Consolidated Plaintiff Yihua Lifestyle Technology Co., Ltd.[1]

*Gregory S. McCue* and *Adriana M. Campos-Korn*, Steptoe LLP, of Washington, D.C., for Consolidated Plaintiffs Evolutions Flooring, Inc., Linyi Anying Wood Co., Ltd., Linyi Youyou Wood Co., Ltd., and Struxtur, Inc.

*Mark R. Ludwikowski*, Clark Hill PLC, of Washington, D.C., for Plaintiff-Intervenors Benxi Wood Company, Dalian Jiahong Wood Industry Co., Ltd., Dalian Kemian Wood Industry Co., Ltd., Dongtai Fuan Universal Dynamics, LLC, HaiLin LinJing Wooden Products Co., Ltd., Jiangsu Guyu International Trading Co., Ltd., Jiangsu Mingle Flooring Co., Ltd., Jiangsu Simba Flooring Co., Ltd., Jiashan HuiJiaLe Decoration Material Co., Ltd., Kemian Wood Industry (Kunshan) Co., Ltd., Lumber Liquidators Services, LLC, Suzhou Dongda Wood Co., Ltd., and Tongxiang Jisheng Import and Export Co., Ltd.

*Brendan D. Jordan*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant the United States. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Tara K. Hogan*, Assistant Director. Of counsel on the brief was *Christopher A.*

---

[1]     On May 22, 2023, the court granted Yihua Lifestyle Technology Co., Ltd.'s attorney's motion to withdraw as counsel. *See* Order (May 22, 2023), ECF No. 134.

*Kimura*, Attorney, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

    *Stephanie M. Bell*, *Timothy C. Brightbill*, *Maureen E. Thorson*, and *Tessa V. Capeloto*, Wiley Rein LLP, of Washington, D.C. for Defendant-Intervenor American Manufacturers of Multilayered Wood Flooring.


    Eaton, Judge: Before the court are the U.S. Department of Commerce's ("Commerce" or the "Department") results of redetermination pursuant to the court's remand order in *Fusong Jinlong Wooden Group Co. v. United States*, 48 CIT __, 693 F. Supp. 3d 1302 (2024) ("*Fusong II*").[2] *See* Final Results of Redetermination Pursuant to Court Order (June 7, 2024), ECF No. 165-1 ("Remand Results"). The Remand Results are uncontested, and the parties ask the court to sustain them.[3] *See* Pl.-Ints.' Cmts., ECF No. 167; Consol. Pls.' Cmts., ECF No. 168; Def.'s Resp., ECF No. 169.

    The court will sustain the Remand Results if they comply with the court's remand order, are supported by substantial evidence, and are otherwise in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i). For the following reasons, the court sustains the Remand Results.

---

[2]    This case involves a challenge to the final results of Commerce's sixth administrative review of the antidumping duty order on multilayered wood flooring from the People's Republic of China covering the period of December 1, 2016, through November 30, 2017. *See Multilayered Wood Flooring From the People's Republic of China*, 84 Fed. Reg. 38,002 (Dep't of Commerce Aug. 5, 2019) and accompanying Issues and Decision Mem. (July 29, 2019), PR 484.

[3]    Not all parties filed comments on the Remand Results. The court's case manager contacted counsel for Plaintiffs Fusong Jinlong Wooden Group Co., Ltd., Fusong Qianqiu Wooden Product Co., Ltd., and Dalian Qianqiu Wooden Product Co., Ltd. to confirm that they did not intend to file comments because several Plaintiff-Intervenors and Consolidated Plaintiffs had stated that they "support and incorporate by reference any arguments by the Plaintiffs, as the individual rate for the mandatory respondents impacts the separate rate calculation." Consol. Pls.' Cmts. at 2, ECF No. 168; *see also* Pl.-Ints.' Cmts. at 2, ECF No. 167. On July 30, 2024, counsel confirmed, by email, that Plaintiffs would not file any comments.

## BACKGROUND

The relevant facts and procedural history are set out in the court's prior decisions, familiarity with which is presumed. *See Fusong Jinlong Wooden Grp. Co. v. United States*, 46 CIT __, 617 F. Supp. 3d 1221 (2022), *opinion vacated in part on reconsideration*, No. 19-00144, 2023 WL 6461953 (Ct. Int'l Trade Oct. 4, 2023) ("*Fusong I*"); *Fusong II*, 48 CIT at __, 693 F. Supp. 3d at 1302.

In *Fusong I*, the court reviewed the 85.13% adverse facts available ("AFA") rate determined for Consolidated Plaintiff Sino-Maple (JiangSu) Co., Ltd. ("Sino-Maple"), among other issues. The court "sustain[ed] the Department's decision to use adverse facts available . . . in determining Sino-Maple's dumping margin as supported by substantial evidence and in accordance with law." *Fusong I*, 46 CIT at __, 617 F. Supp. 3d at 1227.

Subsequently, the court issued an order vacating *Fusong I* with respect to the court's ruling that remand was required as to the method Commerce applied when selecting the AFA rate. *Fusong Jinlong Wooden Grp. Co. v. United States*, No. 19-00144, 2023 WL 6461953, at *1 (Ct. Int'l Trade Oct. 4, 2023) (not published in Federal Supplement) (finding, on reconsideration, that "Commerce's method for selecting an adverse facts available rate for Sino-Maple was lawful").

The court then issued *Fusong II*. There, the court held that the Department's chosen method for determining the Separate Rate Companies'[4] rate (i.e., the separate, or "all-others," rate under 19 U.S.C. § 1673d(c)(5)(B)[5]), by taking a simple average of the two individually examined

---

[4]    The "Separate Rate Companies" are the non-individually examined respondents that challenged Commerce's calculation of the separate rate assigned to them, i.e., the plaintiff parties in this action.

[5]    The statute provides:

mandatory respondents'[6] dumping rates—a 0% rate and an 85.13% rate (based entirely on AFA)—

was unsupported by substantial evidence and otherwise not in accordance with law. *See Fusong*

*II*, 48 CIT at __, 693 F. Supp. 3d at 1313-14. The court found that Commerce's chosen method

was a departure from the so-called "expected method," which, as explained in the Statement of

Administrative Action,[7] calls for the use of a weighted average to determine the all-others rate,

under certain circumstances:

> The expected method in . . . cases [where all the rates for the individually examined respondents are zero, *de minimis*, or determined entirely on the basis of facts available or AFA] will be to *weight-average* the zero and *de minimis* margins and margins determined pursuant to the facts available [or AFA], *provided that volume data is available*.

Statement of Administrative Action accompanying the Uruguay Round Agreements Act ("SAA"),

H.R. Doc. No. 103-316, at 873 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4201 (emphasis

added). In other words, in an administrative review, when the margins calculated for the mandatory

respondents are zero, *de minimis*, or based entirely on facts available or AFA (as was the case

---

> If the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or *de minimis* margins, or are determined entirely under section 1677e of this title, [Commerce] may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.

19 U.S.C. § 1673d(c)(5)(B).

[6]    The two mandatory respondents were Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. and Consolidated Plaintiff Sino-Maple, which received, respectively, rates of 0% and 85.13%.

[7]    "The statement of administrative action approved by the Congress under section 3511(a) of this title shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

Consol. Court No. 19-00144                                                                Page 6

here), Commerce is expected to weight average, by volume, these rates, to determine the rate for

the Separate Rate Companies.

In the Issues and Decision Memorandum accompanying the final results, Commerce found

that the volume data on the record, in particular that of Sino-Maple, was incomplete and thus

unusable for purposes of the expected method. *See* Issues and Decision Mem. at 25 (July 29, 2019),

PR 484. But in *Fusong II*, the court found that

> Commerce has not adequately explained its reason for departing from the expected
> method. Moreover, the Department has not supported with substantial evidence its
> finding that "volume data for Sino-Maple [was] incomplete." . . . Commerce did
> not explain why Sino-Maple's reported sales volume data, which the Department
> found reliable for mandatory respondent selection purposes, was not also reliable
> for calculating a weighted average under the expected method. Nor did Commerce
> explain why it could not rely on the chart that it created, which was derived from
> record evidence and placed on the record—depicting the total volume of Sino-
> Maple's reported and unreported U.S. sales during the period of review. As such,
> the court cannot see how Commerce's statements (1) comply with the law or (2) are
> supported by substantial evidence.

*Fusong II*, 48 CIT at __, 693 F. Supp. 3d at 1313-14. Thus, the court ordered that, on remand,

> Commerce must explain, and support with substantial evidence, its decision to use
> a simple average of [mandatory respondents] [Jiangsu Senmao Bamboo and Wood
> Industry Co., Ltd.]'s 0% rate and Sino-Maple's 85.13% rate as the rate assigned to
> the Separate Rate Companies. If Commerce finds it cannot do so, it shall reconsider
> its decision to depart from the expected method.

*Id.* at __, 693 F. Supp. 3d at 1314. Thereafter, Commerce conducted a remand proceeding, the

results of which are before the court.


## DISCUSSION

On remand, Commerce changed its decision to use a simple average of the mandatory

respondents' rates to determine the separate rate and instead used a weighted average, as required

by the expected method:

       Commerce agrees with the Court's *Remand Order* that Sino-Maple's quantity and value information is available on the record for use in calculating a weighted-average dumping margin in line with the statute and the SAA. As the Court pointed out, Commerce entered this information into the record and also included a breakdown of Sino-Maple's reported and unreported U.S. sales quantity and value for the period of review. Thus, on remand, for the analysis below, Commerce used Sino-Maple's value information to calculate the weighted-average rate, in accordance with Commerce's current practice.

Remand Results at 5. Ultimately, "Commerce determine[d] that the weighted-average dumping margin is 31.63 percent for the non-individually examined companies eligible for a separate rate for the period December 1, 2016, through November 30, 2017." *Id.* at 6. The 31.63% rate was several percentage points lower than the 42.57% rate originally calculated for the Separate Rate Companies.

       It is evident that Commerce has followed the court's instructions on remand. Commerce redetermined the separate rate in accordance with the statute and the SAA by using the expected method and relying on the volume evidence on the record to support its calculation. None of the parties object to the Remand Results. Moreover, the parties that have filed comments ask the court to sustain the Remand Results. *See, e.g.*, Consol. Pls.' Cmts. at 2 ("Since the Defendant's *Final Remand Results* are in accordance with the Court's instructions, we respectfully request that the Court uphold the Defendant's decision in the *Final Remand Results.*"); Pl.-Ints.' Cmts. at 2 ("Plaintiff-Intervenors respectfully request that this Court uphold Defendant's Final Remand Results with respect to the method of calculating the dumping margin rate using the weighted average, as opposed to simple average, and establish a final separate rate for non-individually examined companies     ").

       Because Commerce's uncontested redetermination of the Separate Rate Companies' rate (now 31.63%, down from 42.57%) complies with the court's remand instructions, is supported by substantial evidence, and is otherwise in accordance with law, it is sustained.

As a final matter, the court finds that the issues on which the court reserved decision in *Fusong II*, pending the Remand Results, have been rendered moot by Commerce's decision. *See Fusong II*, 48 CIT at __, 693 F. Supp. 3d at 1314 ("Because the remaining issues (i.e., whether Commerce's use of Sino-Maple's AFA margin in its separate rate calculation resulted in a rate that is aberrational and not reflective of the Separate Rate Companies' potential dumping margins and amounts to an excessive fine or penalty under the Eighth Amendment) are dependent on Commerce's reconsideration of its calculation of the separate rate on remand, the court reserves decision on these matters until the results of redetermination are before the court."). Consolidated Plaintiffs A&W (Shanghai) Woods Co., Ltd., Dun Hua Sen Tai Wood Co., Ltd., Dunhua Shengda Wood Industry Co., Ltd., Hangzhou Hanje Tec Co., Ltd., Hunchun Xingjia Wooden Flooring Inc., Huzhou Chenghang Wood Co., Ltd., and Zhejiang Fuerjia Wooden Co., Ltd. (collectively, "Consolidated Plaintiffs") raised these issues in their opening brief in support of their motion for judgment on the agency record. *See* Consol. Pls.' Mem. Supp. Mot. J. Agency R., ECF No. 50-1 at 15-23. At that time, the Separate Rate Companies' rate was 42.57%, the result of a simple average of the mandatory respondents' rates (i.e., 0% and 85.13%).

As discussed in this Opinion, Commerce's revised calculation of the Separate Rate Companies' rate to 31.63% is supported by substantial evidence and otherwise in accordance with law. Consolidated Plaintiffs have not objected to this revised rate either before Commerce or in comments submitted to the court.

The Remand Results comply with the court's order and are supported by substantial evidence. As the results are uncontested, entry of judgment is appropriate, because there are no further issues for the court to adjudicate.

## CONCLUSION

There being no substantive challenge to the Remand Results, and that decision being otherwise in compliance with the court's remand order and supported by substantial evidence, it is sustained. Judgment will be entered accordingly.


                                                                    /s/ Richard K. Eaton
                                                                           Judge


Dated:  September 18, 2024
            New York, New York